```
                                                        U.S. DISTRICT COURT
                                                        DISTRICT OF VERMONT
                                                              FILED
              UNITED STATES DISTRICT COURT
                       FOR THE                          2011 OCT 20  PM 1: 35
                  DISTRICT OF VERMONT
                                                              CLERK
                                                        BY_____
                                                             DEPUTY CLERK
```

| | |
|---|---|
| MARY SUSAN THIBAULT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:10-cv-188 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ORDERING REMAND**
(Docs. 17, 19)

This matter came before the court on the Objection of Plaintiff Mary Susan Thibault (Doc. 19) to the Magistrate Judge's June 20, 2011 Report and Recommendation ("R & R") (Doc. 17.) In the R & R, the Magistrate Judge recommended granting in part Plaintiff's motion for an Order reversing the decision of the Commissioner and remanding the case for further review of the Administrative Law Judge's ("ALJ") step five determination which examines jobs in the national economy that Plaintiff can perform.

Plaintiff objects to the R & R, contending that the Magistrate Judge erred in recommending remand on the limited issue of the step five determination. She seeks remand on the following additional grounds: (1) the ALJ's failure to properly evaluate the lay evidence of record; (2) the ALJ's error in determining Plaintiff's credibility; and (3) the ALJ's failure to develop the record in connection with the onset of Plaintiff's alleged mental impairments.

The Commissioner does not object to remand on the basis stated in the R & R but does object to Plaintiff's proposed additional grounds for remand.

Plaintiff is represented by Judith Brownlow, Esq. The Commissioner is represented by Special Assistant United States Attorney Susan B. Donahue.

## I.     Factual and Procedural Background.

Plaintiff was born on October 29, 1964, and was thirty-two years old on May 1, 1997, her alleged disability onset date. She attended Allegheny College and Moravian Theological Seminary, obtaining a master's degree in pastoral counselling. She has significant experience working as a mental health therapist, caseworker, and human services coordinator for numerous social service agencies. She is married and the primary caregiver of four children.

In July of 1993, Plaintiff was involved in a car accident. Following the accident, Plaintiff reported changes in her cognitive functioning, including difficulty organizing her thoughts and short-term memory problems. Notwithstanding these cognitive problems, approximately three months after the accident Plaintiff returned to work part-time. More than three years later, on May 2, 1997, she discontinued her employment. Shortly thereafter, her first child was born.

In approximately April 2008, Plaintiff applied for Disability Insurance Benefits ("DIB"), and her application was denied initially and on reconsideration. At approximately the same time, Plaintiff applied for Supplemental Security Income ("SSI"), but her application was denied in October 2008 because her countable income exceeded applicable limits. Plaintiff sought no further relief on her SSI application, but she appealed the denial of her DIB application. Plaintiff alleges in her DIB application that, as of May 1, 1997, she has been unable to work due to depression, dysthymia,[1] and

---

[1] Dysthymia is defined as "[a] chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness." STEDMAN'S MEDICAL DICTIONARY 602 (28th ed. 2006).

"long[-]term issues from head injury." (Administrative Record ("AR") 207.) She states that, since the 1993 accident, she "ha[s] had issues with being able to concentrate, stay on track, [and] remember[] things[.]" (*Id.*)

On February 11, 2010, ALJ Paul Martin held a hearing via video conference on Plaintiff's DIB application. Plaintiff was represented by counsel and testified. Social worker Joyce Perkins and Vocational Expert ("VE") Christine Spaulding also testified at the hearing.

On March 5, 2010, the ALJ issued a decision concluding that Plaintiff was not disabled[2] under the Social Security Act from her alleged onset date of May 1, 1997, through her date last insured of December 31, 2002. After accepting additional evidence and arguments into the record, the Decision Review Board ("DRB") issued a decision "adopt[ing]" the ALJ's "findings or conclusions that the claimant was not disabled." (AR 4.) The DRB "agree[d] with the [ALJ's] findings under steps 1, 2, 3, 4 and 5 of the sequential evaluation[,]" but issued the decision "to provide clarification with regard to the [ALJ's residual functional capacity ("RFC")] assessment . . . and to evaluate the weight attached to relevant opinion evidence in the record." (*Id.*)

On August 2, 2010, Plaintiff filed her Complaint in this court alleging the ALJ's disability determination was erroneous as a matter of law. The court briefly summarizes the ALJ's decision and the R & R below before addressing Plaintiff's specific objections to the R & R.

**A. The ALJ's Decision.**

ALJ Martin applied the five-step analysis to evaluate Plaintiff's disability claim under the Social Security Act.[3] He first found that Plaintiff had not engaged in

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[3] The five-step analysis is conducted as follows:

3

substantial gainful activity since her alleged onset date of May 1, 1997, through her date last insured of December 31, 2002.

At steps two and three, the ALJ found that Plaintiff suffered severe impairments, including a back condition, depression, and "neurocognitive residuals from a traumatic brain injury." (AR 14.) The ALJ further found that Plaintiff had a history of back pain[4] that was aggravated by prolonged standing and walking. Finally, he noted that Plaintiff reports irritability, fatigue, a lack of motivation, and anhedonia.[5] The ALJ found these impairments had more than a minimal impact on Plaintiff's ability to perform work-like tasks and were "severe," but concluded Plaintiff did not have an impairment or combination of impairments that met or medically equalled one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. (*Id.*)

---

> The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires him to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir. 1984).
>
> If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts[v. Barnhart],* 388 F.3d [377,] 383 [(2d Cir. 2004)], and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009)[.]

*Zokaitis v. Astrue*, 2010 WL 5140576, at *5-6 (D. Vt. Oct. 28, 2010).

[4] Plaintiff had a L4-5 discectomy for L5 radiculopathy.

[5] Anhedonia is defined as "the absence of pleasure from the performance of acts that would ordinarily be pleasurable." STEDMAN'S MEDICAL DICTIONARY 88 (27th ed. 2000).

The ALJ determined that Plaintiff had the RFC to perform "medium work" as defined in 20 C.F.R. § 404.1567(c), except that she could only perform one and two step tasks at a time with no multi-tasking. Additionally, the ALJ noted that Plaintiff could tolerate routine workplace changes, but she would need a supervisor to remind her of tasks and to check on her every one to two hours.

The ALJ found that Plaintiff has moderate restrictions in her daily living activities and required assistance to complete tasks such as "cleaning, taking care of chores for the children, meal preparation, and even some personal care tasks." (AR 15.) Despite these restrictions, he found that Plaintiff was able to engage in "a rather wide range of daily activities," such as caring for her young children, preparing meals, and performing household chores. (AR 17.) He also found that, to the extent Plaintiff's statements concerning "the intensity, persistence and limiting effects" of her symptoms were inconsistent with his RFC assessment, Plaintiff's testimony was not credible. (*Id.*)

In step four, the ALJ concluded Plaintiff could not perform her past relevant work, based on her RFC and other vocational characteristics. At step five, based on the VE's testimony, the ALJ determined Plaintiff could perform other work which exists in significant numbers in the national economy, including photocopy machine operator, production assembler, electronic assembler, small parts assembler, final assembler, and printed circuit board taper. Thus, the ALJ concluded that Plaintiff was not disabled from her alleged onset date of May 1, 1997, through her date last insured of December 31, 2002.

### B. The Report & Recommendation.

The Magistrate Judge determined that the ALJ's step five conclusion that Plaintiff could perform work which exists in significant numbers in the national economy was not supported by substantial evidence, despite the VE's testimony, and recommended that the court remand the case on this ground only. The Magistrate Judge recommended that the court affirm the remainder of the ALJ's decision denying Plaintiff's DIB application.

II.     Analysis and Conclusions of Law.

A. Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879 (1974).

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g). It is the Commissioner that resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for the Commissioner's. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Sec'y of HHS*, 728 F.2d 588, 591 (2d Cir.

1984). Nevertheless, if the "evidence has not been properly evaluated because of an erroneous view of the law . . . the determination of the [Commissioner] will not be upheld." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

### B. The ALJ's Step Five Determination.

Neither party objects to the Magistrate Judge's recommendation that this court grant Plaintiff's motion for an Order reversing the Commissioner's decision in part and remanding the matter for reconsideration of the ALJ's step five determination.

Accordingly, the court hereby ADOPTS the Magistrate Judge's findings and recommendation on this issue, and REMANDS this matter to the ALJ for further consideration of the step five determination for the reasons stated in the R & R.

### C. Whether the ALJ Erred in Failing to Consider Lay Witness Testimony from Christine Arvizu.

At the hearing before the ALJ, Plaintiff submitted a written statement from a lay witness, Christine Arvizu, which included her observations of Plaintiff's daily limitations. The ALJ did not specifically mention this statement in his opinion or give reasons why he accepted or rejected any part of it. The Magistrate Judge concluded that the ALJ did not err in failing to consider Ms. Arvizu's statement because she was not a medical source offering an opinion about Plaintiff's "ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures in a work setting." 20 C.F.R. § 404.1513(c)(2).

The Magistrate Judge further reasoned that Ms. Arvizu's statement carried little weight because her knowledge of Plaintiff's daily activities was limited to the period between May to December 2002 and did not take into consideration positions in the national economy that would not impose upon Plaintiff the same burdens as she experienced in running a household of six, including four young children. Accordingly, Magistrate Judge concluded the issue was not whether Plaintiff could independently manage a household, but whether she had the ability to sustain employment outside the home, and therefore Ms. Arvizu's statement was not entitled to significant weight.

"As a fact-finder, an ALJ is free to accept or reject testimony like that given by [a lay witness]. A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (requiring remand in part because ALJ failed to set forth reasons for rejecting lay witness testimony); *Burgos v. Barnhart*, 2003 WL 21983808, at *17 (S.D.N.Y. Aug. 20, 2003) (citing *Williams*). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *but see Burden v. Astrue*, 588 F. Supp. 2d 269, 278 (D. Conn. 2008) (limiting the *Williams* holding such that "an ALJ must make a credibility finding of lay witness testimony only when the testimony is critical to the adjudication of an application" for the sake of "administrative efficiency and economy.").[6]

Defendant contends that the court should follow *Burden* for reasons of administrative efficiency and economy and argues that any error by the ALJ in failing to address or assign weight to Ms. Arvizu's opinion was not critical to the ultimate disability determination. (Doc. 20 at 4-5, citing *Burden*, 588 F. Supp. 2d at 278-79.) Defendant points out that Ms. Arvizu's statement regarding Plaintiff's daily restrictions "is inconsistent with [the] minimal medical evidence of functional difficulties from [Plaintiff's] 1997 disability onset date through December 31, 2002." (Doc. 20 at 5.) Defendant further notes that the Commissioner's regulations state evidence from neighbors *may* be considered when determining a claimant's disability, and therefore the ALJ was not required to consider Ms. Arvizu's statement because she is not a medical source. *See* 20 C.F.R. § 404.1513(d)(4) (stating the Commissioner may rely on evidence

---

[6] The district court in *Burden* found that the testimony of the claimant's friend corroborating her alleged symptoms and limitations was substantially outweighed by other evidence in the record. 588 F. Supp. 2d at 278. Additionally, the court concluded the lay witness testimony was not "critical to the adjudication of [the] application" because, unlike the claimant's testimony, the failure to address it did not undermine the ALJ's decision. *Id.* Accordingly, the court concluded it was not legal error for the ALJ to fail to address the lay witness testimony. *Id.* at 279.

from non-medical sources such as spouses, parents, siblings, friends, and neighbors when determining the severity of a plaintiff's impairments). Finally, Defendant argues that *Williams* contains language limiting its holding that an ALJ must consider lay witness testimony to those situations in which the lay testimony is "uncontradicted," "generally consistent with the medical diagnoses," and "critical" to the Commissioner's determination. 859 F.2d at 260-61.

Plaintiff counters that the court should reject *Burden* and follow *Williams* and the Commissioner's own guidance, which requires an ALJ to consider lay evidence. *See* Social Security Regulation (SSR) 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (listing factors to evaluate when ALJ considers testimony from non-medical sources such as spouses, parents, friends, and neighbors, including "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.").

Second Circuit precedent, as stated in *Williams*, requires that an ALJ's finding that a "[lay] witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." 859 F.2d at 260-61 (citing *Carroll v. Sec'y of HHS*, 705 F.2d 638, 643 (2d Cir. 1983)); *see also Barreto ex rel. Rivas v. Barnhart*, 2004 WL 1672789, at *4 (S.D.N.Y. July 27, 2004) (considering testimony of the claimant and a lay witness and stating "[t]he ALJ is required to set forth 'not only an expression of the evidence which s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'") (internal citation omitted); *Thorp v. Apfel*, 1998 WL 683767, at *4-5 (W.D.N.Y. Sept. 17, 1998) (concluding that the ALJ erred in failing to supply an explanation regarding whether he considered the probative value of the written statements of two lay witnesses). Case law from other circuits supports this conclusion. *See Dodrill*, 12 F.3d at 919 (stating that "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."); *Burnett v.*

*Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) (remanding in part because ALJ failed to address the testimony of two lay witnesses); *see also Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984) (remanding even though "there may be strong grounds upon which the ALJ rejected claimant's evidence . . . [because] we cannot say on the basis of the record that such a conclusion is self-evident. . . . It is more than merely 'helpful' for the ALJ to articulate reasons (e.g., lack of credibility) for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."); *see generally* SSR 06-03P, 2006 WL 2329939, at *1 (stating when the Commissioner "make[s] a determination or decision of disability, we will consider all of the available evidence in the individual's case record.").

The court thus declines to adopt the R & R's conclusion that, in light of other evidence in the record, the ALJ's failure to adequately state his reasons for rejecting Ms. Arvizu's statement was harmless error.[7] The court thus REMANDS for consideration of the probative value, if any, of Ms. Arvizu's lay witness statement.

### D. Whether the ALJ Erred in Assessing Plaintiff's Credibility.

The Magistrate Judge found that the ALJ did not err in determining that Plaintiff's statements about the intensity, persistence, and limitations her symptoms caused "are not credible to the extent they are inconsistent with the . . . [RFC] assessment." (AR 17.) The ALJ's credibility findings were based on record evidence. In particular, the ALJ relied on the following five evidentiary factors when making his step 3 determination: (1) Plaintiff's ability to return to work at her skilled job for a prolonged period after her 1993 motor vehicle accident; (2) her sporadic treatment for mental health issues during the relevant time period; (3) health records notations that her symptoms were "under control" in July of 1997 and "in remission" in September of 1997; (4) the absence of record evidence about any cognitive defects from which Plaintiff suffered; and (5) that

---

[7] Because the court has already ordered a remand of this case, it need not decide if, in the absence of any other error, an ALJ's failure to even mention lay witness testimony, much less provide reasons for rejecting it, may constitute harmless error in circumstances not present here.

Plaintiff was only moderately restricted in her daily activities.[8] (AR 16.) When considering Plaintiff's credibility as a part of the overall RFC assessment, the ALJ noted that she is able to engage in a "rather wide range of daily activities," including caring for her young children, preparing simple meals, taking care of household chores, participating in a mother's group, driving a car, shopping for clothing and food, handling her money, reading, and sewing. (AR 17.)

Although acknowledging that the ALJ examined more than one source of information regarding her credibility, Plaintiff objects to the ALJ's conclusion that she was able to engage in a "rather wide range" of daily activities, which she claims is inconsistent with the ALJ's step three finding that she experienced moderate restrictions in daily activities.[9] The court disagrees.

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte*, 728 F.2d at 591 (internal quotation marks and alterations omitted). "One strong indication of the credibility of [a claimant's] statements is their consistency . . . with other information in the case record[.] Especially important are statements made to treating or examining medical sources." SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996). When evaluating the intensity and persistence of symptoms to determine how those symptoms limit the claimant's capacity for work, an ALJ is required to make "a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects[.]" *Id.* at *1. In assessing credibility, an ALJ considers the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate symptoms; the type, dosage, effectiveness, and side

---

[8] Plaintiff does not object to the ALJ's reliance on the first four of these five evidentiary factors.

[9] The Magistrate Judge determined the ALJ's failure to explain the discrepancy between his finding that Plaintiff partakes in a "rather wide range of daily activities," and his step three determination that she experienced a "moderate restriction" in daily activities, was at most harmless error because the ALJ had the discretion to discount Plaintiff's self-reporting based on other substantial evidence.

effects of any medication the individual takes to alleviate the symptoms; and other treatment or measures to relieve those symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p, 1996 WL 374186, at *3. If an ALJ "decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the [c]ourt to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

Here, the ALJ considered a wide range of evidence in evaluating Plaintiff's credibility and cited record evidence to support his conclusion that, notwithstanding moderate limitations on Plaintiff's daily activities, the "rather wide range of activities" in which she did engage undermined her credibility regarding the intensity, persistence, and limiting effects of her physical and mental symptoms. (AR 15-16.) It was the ALJ's prerogative to reach this conclusion, which is supported by substantial evidence in the record and is not inherently inconsistent. *See Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 328 (S.D.N.Y. 2010) (stating "the ALJ was entitled to weigh the conflicting opinion evidence and credit that which he found most persuasive.")

For the foregoing reasons, the court ADOPTS the R & R's conclusion that the ALJ did not err in assessing Plaintiff's credibility.

### E. Whether the ALJ Erred in Failing to Further Develop the Record.

Finally, Plaintiff claims the Magistrate Judge failed to address her argument that this is an appropriate case for further record development in connection with the onset and progression of her mental impairments. Plaintiff bases this argument on Dr. McAllister's notations in his January 30, 2009 neuropsychiatric evaluation report that additional information might clarify whether Plaintiff's current impairment level existed before the date last insured, as well as possibly explain whether her cognitive symptoms stemmed from injuries she sustained in the car accident or from her depression. Plaintiff observes that no state agency medical consultant reviewed the more recent evidence to compare it to Dr. Barbara Lauer-Listhaus's October 1993 examination of Plaintiff.

12

Plaintiff asks the court to remand the case to the ALJ for further record development regarding the onset and progression of her mental impairments. Defendant contends that the record was adequate for the ALJ to make the disability determination in this case, and that Plaintiff has failed to demonstrate harm from the alleged error.

Claimants bear the primary responsibility for providing evidence proving their disabilities. 20 C.F.R. § 404.1512(a). Because a hearing on disability benefits is a non-adversarial proceeding, however, an ALJ has an affirmative obligation to develop the administrative record. *Echevarria v. Sec'y of HHS*, 685 F.2d 751, 755 (2d Cir. 1982). This duty exists even when the claimant is represented by counsel. *See Baker v. Bowen*, 886 F.2d 289, 292 n.2 (10th Cir. 1989). The Commissioner's regulations state that "[w]hen the evidence we receive from your treating physician . . . or other medical source *is inadequate for us to determine whether you are disabled*, . . . [w]e will first recontact your treating physician . . . or other medical source to determine whether the additional information we need is readily available." 20 C.F.R. § 404.1512(e) (emphasis supplied).

Plaintiff's date last insured for disability purposes pre-dated the ALJ's decision by over nine years. She failed to identify any evidence relevant to the time period from her alleged disability onset date of May 1, 1997, through her date last insured of December 31, 2002, which was missing from the record.

Moreover, there is other evidence which is adequate for determining whether Plaintiff was disabled, such as Dr. Laura Flashman's neuropsychological evaluation dated November 6, 2008. Dr. Flashman wrote her report less than three months before Dr. McAllister's report, and a state agency medical consultant considered it in reaching his conclusion that Plaintiff had no severe mental impairment.

More importantly, Plaintiff failed to establish that further record development is needed, and how the failure to do so is harmful. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (placing burden of showing harm of an alleged error on the party attacking an agency determination). Plaintiff also does not challenge the R & R's finding that the ALJ had no obligation to obtain medical evidence as to a date of Plaintiff's disability

onset because he did not find that she was disabled. *See* SSR 83-20, 1983 WL 31249, at *1 (1983) (requiring the Commissioner to establish the onset date of a claimant's disability "in addition to determining that an individual is disabled"); *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (finding SSR 83-20 "applies only when there has been a finding of disability and it is necessary to determine when the disability began").

In light of the temporal proximity of Dr. Flashman's report and Dr. McAllister's report, Plaintiff has not established that the lack of a medical opinion synthesizing the record through Dr. McAllister's evaluation negatively impacted the ALJ's assessment of her mental RFC through December 2002. The court thus finds that the ALJ did not err in failing to request further record development and hereby ADOPTS the R & R on this issue for the reasons stated therein.

## CONCLUSION

For the reasons stated above, the court ADOPTS IN PART and REJECTS IN PART the Magistrate Judge's R & R (Doc. 17). The court GRANTS IN PART Plaintiff's motion for an Order reversing the ALJ's decision (Doc. 19), and REMANDS the case to the ALJ for a step five determination of jobs in the national economy that Plaintiff can perform and an assessment of Ms. Arvizu's lay witness statement. The court DENIES IN PART Plaintiff's motion insofar as she requests a reversal of the Commissioner's determination regarding her credibility and further development of the record. The court hereby GRANTS IN PART and DENIES IN PART the Commissioner's motion for an Order affirming the ALJ's decision (Doc. 12) for these same reasons.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 20th day of October, 2011.

Christina Reiss, Chief Judge
United States District Court